# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| LAUSTEVEION JOHNSON, ) <br> ) <br> Plaintiff, ) <br> vs. ) <br> ) <br> GAROFALO, *et al.*, ) <br> ) <br> Defendants. ) <br> _____ ) | Case No.: 2:16-cv-01889-GMN-DJA <br><br> **ORDER** |

Pending before the Court is the Partial Motion for Summary Judgment, (ECF No. 104), filed by pro se Plaintiff Lausteveion Johnson ("Plaintiff").[1]  Defendants Connie Bisbee, Board of Parole Commissioner, Darla Foley, Michael Keeler, Lucille Monterde (collectively, "Parole Board Defendants") filed a Response, (ECF No. 113).  Defendants Catherine Cortez Masto, James Cox, James Dzurenda, Micaela Garofalo, Adam Laxalt, Offender Management Division, Office of the Attorney General, Brian Sandoval, Howard Skolnik, Brian Williams, and Gregory Yates (collectively, "NDOC Defendants"), filed a Joinder, (ECF No. 116), to the Response.  Plaintiff did not file a reply.

Also pending before the Court is Parole Board Defendants' Countermotion for Summary Judgment, (ECF No. 114).  NDOC Defendants, filed a Joinder, (ECF No. 117).  Plaintiff filed a Response, (ECF No. 124), to the Motion for Summary Judgment.  Parole Board Defendants filed a Reply, (ECF No. 127), and NDOC Defendants filed a Joinder, (ECF No. 129), to the Reply.

---

[1] In light of Plaintiff's status as a pro se litigant, the Court has liberally construed his filings, holding them to standards less stringent than formal pleadings drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Also pending before the Court is Plaintiff's Motion for Oral Arguments on Dispositive Motion, (ECF No. 130). Defendants filed non-oppositions, (ECF Nos. 131, 132). Plaintiff filed a Reply, (ECF No. 133).

Also pending before the Court is the Motion for Summary Judgment, (ECF Nos. 135), filed by NDOC Defendants.[2] Parole Board Defendants filed a Joinder, (ECF No. 143). Plaintiff filed a Response, (ECF No. 146), and NDOC Defendants filed a Reply, (ECF No. 149).

Also pending before the Court are Plaintiff's Partial Motions to Strike Defendant's Motion for Summary Judgment, (ECF Nos. 144, 148). NDOC Defendants filed Responses, (ECF Nos. 147, 151). Plaintiff did not file a reply.

Also pending before the Court are Plaintiff's Motions for Status Check, (ECF Nos. 150, 181).

I. **BACKGROUND**

Plaintiff is a prisoner in the custody of the Nevada Department of Corrections (NDOC) and currently housed at Southern Desert Correctional Center. (Pl.'s Notice of Change of Address, ECF No. 180); (*see also* NDOC Defs.' Mot. Summ. J. 2:3–4 ("NDOC MSJ"), ECF No. 135).

In 2004, Plaintiff was convicted of sexual assault pursuant to Nevada Revised Statutes ("NRS") 200.364 and 200.366, and sentenced to life with the possibility of parole after ten years. (First Am. Compl. ("FAC") at 9, ECF No. 11). The sentencing court additionally issued Plaintiff a consecutive sentence of eight to twenty years for attempted sexual assault with use of a deadly weapon in violation of NRS 193.330 and 193.165. (*Id.*); (Pl.'s Mot. Partial Summ. J.

---

[2] NDOC Defendants also filed Sealed Unredacted Exhibits in Support of the Motion for Summary Judgment, (ECF No. 137), and an Errata to the Motion for Summary Judgment, (ECF No. 142).

("Pl.'s MSJ") at 3, ECF No. 104).  Plaintiff was nineteen years old when he was charged, and his victim was sixteen-years-old. (FAC at 9).

Plaintiff's first parole hearing occurred on February 20, 2013. (2013 Parole Bd. Order and Risk Assessment, Ex. D to Pl.'s MSJ, ECF No. 104).  The Parole Board denied Plaintiff parole, stating the following reasons for denial: repetitive criminal conduct, nature of the criminal record is increasingly more serious, and impact to victim and/or community. (*See id.*). The Order initially noted that Plaintiff's victim was 13 years old at the time of the offense, but was corrected to indicate that the victim was 16 years old. (Oct. 10, 2013 Parole Commissioners Board Letter, Ex. I to Pl.'s MSJ, ECF No. 104); (Corrected 2013 Parole Risk Assessment, Ex. E to Pl.'s MSJ, ECF No. 104).  However, the decision of the Parole Board denying Plaintiff parole remained unchanged. (*Id.*).

Plaintiff's second parole hearing occurred on March 16, 2016. (2016 Parole Order and Risk Assessment, Ex. F to Pl.'s MSJ, ECF No. 104).  The Parole Board denied Plaintiff parole, stating the following reasons for denial: prior conviction for a sexual offense (which was crossed out), prior conviction for a violent offense (robbery), repetitive criminal conduct, nature of the criminal record is increasingly more serious, impact to victim and/or community, and crime was targeted against a child. (*See id.*).  The Board further noted that the "[v]ictim was sexually assaulted by the inmate on two separate occasions, once a knife point, threatened to kill her, feared for life.  Inmate broke into victim's residence" (*Id.*).  The Order also noted that the victim was under 14 years old at the time of the offense. (*Id.*).

Plaintiff appealed requesting a new parole hearing.  The Parole Board issued a corrected order removing the prior conviction for a sexual offense, removing the "nature of the criminal record is increasingly more serious" aggravating factor, and changing the victim's age to 16. (Corrected 2016 Parole Order, Ex. 7 to Mot. Dismiss, ECF No. 47-7).  However, the decision

of the Parole Board to deny Plaintiff parole remained unchanged and a new hearing was denied. (*See id.*).

On October 24, 2016, Plaintiff filed his Amended Complaint seeking monetary damages and injunctive relief. (FAC at 32, 37). On June 10, 2017, the Court issued its Screening Order, (ECF No. 16), indicating the following claims survived: (1) a retaliation claim against Defendants Brian Williams, Micaela Garofalo, Yates, the Office of the Attorney General, Skolnik, Laxalt, the Offender Management Division, and Sandoval; (2) an equal protection claim against Defendants Garofalo, Williams, Monterde, Dzurenda, Board of Parole Commissioners, Yates, Foley, Keeler, and Las Vegas Metropolitan Police Department (LVMPD)[3]; (3) a due process claim against Defendants Keeler, Garofalo, Williams, Yates, the Attorney General's Office, Masto, Dzurenda, the Board of Parole Commissioners, Bisbee, Sandoval, Skolnik, Foley, Cox, Laxalt, the Offender Management Division, LVMPD, Keeler, and Monterde; and (4) an ex post facto claim against Defendants Garofalo, Williams, Monterde, Dzurenda, the Board of Parole Commissioners, Yates, Foley, Keeler, Sandoval, Masto, and Bisbee. (Screening Order 9:6–10:28, ECF No. 16). On August 22, 2018, the Court dismissed Plaintiff's claims against Parole Board Defendants with prejudice. (Order 17:7–9, ECF No. 88).

Plaintiff's third parole hearing occurred on February 20, 2019. (2019 Parole Order and Risk Assessment, Ex. 1 to Parole Board Defs.' MSJ, ECF No. 114-1). The Parole Board granted Plaintiff parole to his consecutive sentence. (*Id.*). Plaintiff's "effective parole date" was May 1, 2019. (*Id.*).

///

///

---

[3] Plaintiff's claims against LVMPD were later dismissed without prejudice for failure to effect timely service in accordance with Federal Rule of Civil Procedure 4(m). (Order, ECF No. 86).

On February 25, 2019, the Court granted in part and denied in part Plaintiff's Motion to Alter or Amend Order, (ECF No. 93).[4] In the Order, the Court indicated that

> Plaintiff's due process claim is based, in part, on allegations that the Parole Board Defendants applied improper procedures and inapplicable aggravating factors during Plaintiff's parole board hearings. . . . These allegations align with the Nevada Supreme Court's holding in *Anselmo v. Bisbee*, and thus may serve as a viable basis for a due process claim due to alleged application of inapplicable aggravating factors during consideration of parole.[5]

(Order 5:17–25, ECF No. 103). The Court also reaffirmed its earlier ruling that Parole Board Defendants are "absolutely immune from Plaintiff's due process claim to the extent that Plaintiff seeks monetary damages." (*Id.* 6:7–10). However, the Court found that "absolute immunity does not extend to injunctive relief against the Parole Board Defendants." (*Id.*) (citing *Thornton v. Brown*, 757 F.3d 834, 840 (9th Cir. 2013); *Tripp v. Bisbee*, 670 F. App'x 494, 495 (9th Cir. 2016)).

Plaintiff, Parole Board Defendants, and NDOC Defendants subsequently filed summary judgment motions, (ECF Nos. 104, 114, 135).[6] Additionally, Plaintiff filed several motions seeking various forms of relief, (ECF Nos. 121, 130, 144, 148, 150, 181). This Order now follows.

## II.  **LEGAL STANDARD**

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

---

[4] The Court construed Plaintiff's Motion to Alter or Amend Order, (ECF No. 93), as a motion for reconsideration.

[5] Plaintiff's Motion to Alter or Amend Order, (ECF No. 93), only addressed Plaintiff's 2013 and 2016 parole hearings. Plaintiff's 2019 parole hearing took place months after Plaintiff's Motion, (ECF No. 93), was fully briefed. As such, the Court's February 25, 2019 Order, (ECF No. 103), did not consider Plaintiff's 2019 parole hearing.

[6] "Plaintiff moves Partial Motion for Summary Judgment only addressing violations related to his Parole." (Pl.'s MSJ at 2. Thus, it is the Court's understanding that Plaintiff does not move for summary judgment on his First Amendment retaliation claim, to the extent it relates to Plaintiff's visitation with his son, or on his equal protection claim.

affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324. At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III. DISCUSSION

### A. Civil Rights Claims Under 42 U.S.C. § 1983

Section 1983 of Title 42 of the United States Code aims "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) (quoting *McDade v. West*, 223 F.3d 1135 1139 (9th Cir. 2000)). The statute "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights[,]" *Conn v. Gabbert*, 526 U.S. 286, 290 (1999), and therefore "serves as the procedural device for enforcing substantive provisions of the Constitution and federal statutes." *Crumpton v. Almy*, 947 F.2d

1418, 1420 (9th Cir. 1991).  Claims under § 1983 require a plaintiff to allege (1) the violation of a federally-protected right by (2) a person or official acting under the color of state law. *Warner*, 451 F.3d at 1067.  Further, to prevail on a § 1983 claim, the plaintiff must establish each of the elements required to prove an infringement of the underlying constitutional or statutory right.

### 1. *supervisory liability under § 1983*

"Liability under [§] 1983 arises only upon a showing of personal participation by the defendant.  A supervisor is only liable for the constitutional violations of . . . subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.  There is no respondeat superior liability under [§] 1983." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Preschooler II v. Clark Cnty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1182 (9th Cir. 2007) (concluding that allegations that school officials knew of alleged violation and failed to take corrective action were sufficient to state a claim); *Ortez v. Washington Cty, Or.*, 88 F.3d 804, 809 (9th Cir. 1996) (concluding proper to dismiss where no allegations of knowledge of or participation in alleged violation).

Here, Plaintiff contends that Defendants Skolnik, Dzuenda, and Laxalt are liable for First Amendment, Due Process Clause, and Ex Post Facto Clause violations Plaintiff allegedly suffered because Defendants Skolnik, Dzuenda, and Laxalt were "present at the 2012 Board of Prison Commissioners meeting where it was brought to light that 'NDOC Officials had been placing false sexual assault charges in inmates' files that is causing inmates parole to be denied.' . . . Yet they refuse to correct it [although] Plaintiff was directly [a]ffected by having multiple false sexual assault charges placed in his Parole Board Reports in 2013 and 2016, that

caused his parole to be denied for 6 years[.]" (Pl.'s MSJ at 24–25). Plaintiff further maintains that Defendants Dzuenda and Laxalt "created an atmosphere of false retaliatory parole reports and directed as much against Plaintiff because [of] his multiple lawsuits against NDOC and the parole board which were 19 in total." (Pl.'s Resp to NDOC MSJ at 8, ECF No. 146). Additionally, Plaintiff asserts that "former director Skolnik implemented the NOTIS system in NDOC in 2012 that was causing inmates paroles to be denied." (*Id.* at 17). To support these allegations, Plaintiff merely provides the minutes of the 2012 Board of Prison Commissioners meeting, which contain the names of certain government officials that were present during the meeting. (2012 Prison Comm'rs Meeting Mins. at 1, Ex. A to Pl.'s MSJ, ECF No. 104). However, the minutes do not show Defendants Skolnik, Dzuenda, or Laxalt as being present during the meeting. (*See id.*). More importantly, the minutes do not show that Defendants Skolnik, Dzuenda, and Laxalt participated in or directed the alleged violations of their subordinates, or knew of the alleged violations and failed to act to prevent them. Accordingly, because liability under § 1983 arises only upon a showing of personal participation by a defendant, Defendants Skolnik, Dzuenda, and Laxalt are entitled to summary judgment as a matter of law.

### 2. *"person" under § 1983*

A governmental agency that is an arm of the state is not a person for purposes of § 1983. *See Howlett v. Rose*, 496 U.S. 356, 365 (1990); *Flint v. Dennison*, 488 F.3d 816, 824–25 (9th Cir. 2007); *Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997); *Hale v. Arizona*, 993 F.2d 1387, 1398–99 (9th Cir. 1993) (en banc); *Hutchins v. Nevada Dep't of Corr.*, No. 3:10-cv-00369-LRH-RAM, 2010 WL 3724902, at *2 (D. Nev. Sept. 15, 2010); *cf. Durning v. Citibank, N.A.*, 950 F.2d 1419, 1423 (9th Cir. 1991) (explaining that agencies that are arms of the state are entitled to the same immunity from suit as the state because "the state is the real, substantial party in interest.").

Here, Plaintiff has named the Office of the Attorney General and the Offender Management Division (OMD) as defendants in this action.  However, the Office of the Attorney General and OMD are governmental agencies that are an arm of the state; and therefore, they are not persons for purposes of § 1983.[7]  Accordingly, NDOC Defendants' Motion for Summary Judgment is granted as to all claims asserted against the Office of the Attorney General and OMD.

### B.    First Amendment Retaliation

"Prisoners have a First Amendment right to file grievances against prison officials and be free from retaliation for doing so." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012). In the prison context, a claim for First Amendment retaliation under § 1983 must establish five elements: "(1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005).

Here, Plaintiff argues NDOC Defendants violated Plaintiff's First Amendment rights by retaliating against him for filing grievances and lawsuits. (FAC at 28.)  In order to prevail on his Motion for Summary Judgment, Plaintiff must establish the absence of a genuine issue of fact on each issue material to his case. *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

*///*

---

[7] Further, the Court reaffirms its prior ruling that because "the Board of Parole Commissioners is an arm of the state, it is immune from this suit pursuant to the Eleventh Amendment." (Order, ECF No. 88) (citing *Franceschi v. Schwartz*, 57 F.3d 828, 831 (9th Cir. 1995)).

### 1.     *Plaintiff's claim against Defendant Yates*

Regarding Defendant Yates, Plaintiff alleges "either Williams assisted Yates in creating a false parole board report in 2016 or ordered Yates to create a false parole board report." (Pl.'s Resp. NDOC MSJ at 7). Plaintiff asserts that "Yates placed false information and false charges of prior sexual assault, and . . . 3 false convictions of NRS 213.1255 out of retaliation for Plaintiff's grievances and lawsuits." (*Id.* at 10).

Both NDOC Defendants and Plaintiff have produced the 2016 Parole Board Report prepared by Defendant Yates. (2016 Parole Bd. Report, Ex. C to NDOC MSJ, ECF No. 137-2); (*see also* Ex. 18 to Pl.'s Resp. NDOC MSJ, ECF No. 146-4) (same). The report does not show prior charges for sexual assault, nor does it show three convictions under NRS 213.1255. (*See generally id.*). Therefore, Plaintiff's allegations of false charges and convictions in the report are unfounded. Regarding "false information," Plaintiff contends that Defendant Yates incorrectly stated Plaintiff's active gang membership status and incorrectly stated that Plaintiff's victim was 13 years old, when she was actually 16 years old.

In his declaration, Defendant Yates explains that as a case worker, one of his duties is to prepare parole reports for inmates that are "scheduled to go in front of the parole board." (Yates Decl. ¶ 5, Ex. D to NDOC MSJ, ECF No. 135-4). In preparing a report, case workers are permitted to rely on documents such as an inmate's Presentence Investigation Report ("PSI"), prior parole reports, and other documents. (*Id.* ¶ 8). Yates explains that in preparing Plaintiff's 2016 Parole Board Report, he relied on Plaintiff's PSI and Plaintiff's prior parole report, which was prepared in 2012 by non-party Tasheena Sandoval. (*Id.* ¶ 10). Both Plaintiff's PSI and the prior parole report are provided as exhibits to NDOC's Motion for Summary Judgment. (2013 Parole Bd. Report, Ex. B to NDOC MSJ, ECF No. 137-1); (PSI, Ex. N to NDOC MSJ, ECF No. 137-6). Indeed, Plaintiff's prior parole board report incorrectly states that Plaintiff's victim was 13 years old at the time of the offense. (2013 Parole Bd. Report at 1). Additionally,

Plaintiff's PSI states that Plaintiff "is a self-admitted member of the GPK street gang[.]" (PSI at 4). Moreover, Defendant Yates asserts that he "did not speak to or receive any direction from either Defendant Micaela Garofalo or Defendant Brian Williams in the preparation of Plaintiff Johnson's Parole report." (Yates Decl. ¶ 17). As such, NDOC Defendants have provided evidence showing the 2016 Parole Board Report did not contain false charges and convictions, and that Defendant Yates did not have a retaliatory motive when preparing Plaintiff's Parole Board Report. Rrather, Yates relied on Plaintiff's prior parole board report and PSI. On the other hand, Plaintiff has only provided his bare assertions of retaliatory conduct in support of this claim. Accordingly, summary judgment is granted in favor of NDOC Defendants regarding Plaintiff's retaliation claim against Defendant Yates.

### 2. *Plaintiff's claim against Defendant Garofalo*

Regarding Defendant Garofalo, Plaintiff alleges that, at the direction of Defendant Williams or Yates, Defendant Garofalo improperly classified Plaintiff as "high risk to re-offend" in retaliation for filing grievances or lawsuits, and that this led to the denial of his parole in 2016. (FAC at 10–11).

In her declaration, Defendant Garofalo explains that she is a psychologist for NDOC and she is "often tasked with the preparation of Static-99R reports." (Garofalo Decl. ¶¶ 3, 6, Ex. E to NDOC MSJ, ECF No. 135-5). "A Static-99R report is an assessment that determines the risk of an offender's recidivism." (*Id.* ¶ 7). Garofalo asserts that psychologists do not need to meet with an inmate in order to prepare his Static-99R report because "the analysis is based on information surrounding the underlying offense of the inmate, which can be discovered with a review of the [inmate's PSI]." (*Id.* ¶ 8). Garofalo further indicates that in 2016 she prepared a Static-99R report for Plaintiff; that she did not meet with him to prepare the report; and that she relied on Plaintiff's PSI. (*Id.* ¶¶ 9–11). Additionally, Garofalo states that Plaintiff received a score of 7 and that the "high-risk" category is applied with a score of 6 or above. (*Id.* ¶¶ 12–

136). Furthermore, Garofalo declares: "I did not speak to Defendant Gregory Yates or Defendant Brian Williams in in the preparation of the Static-99R form. Neither Defendant Gregory Yates nor Defendant Brian Williams directed me in the preparation of the [risk assessment] Static-99R form." (*Id.* ¶¶ 14–15); (*see also* Williams Decl. ¶¶ 18–19) (Williams declaring that he did not assist or direct Garofalo in the preparation of Plaintiff's Static-99R form).

NDOC Defendants move for summary judgment arguing that the Static-99R risk assessment report does not take into account the age of an inmate's victim and does not rely on any particular NRS statute of conviction. As proof, NDOC Defendants provide the Static-99R report Defendant Garofalo prepared for Plaintiff which indeed shows that Plaintiff obtained a score of 7 and that 6 or higher places an inmate in the "high-risk" category. (Static-99R Assessment, Ex. F to NDOC MSJ, ECF No. 137-3). Moreover, the Static-99R report does not inquire as to the age of Plaintiff's victim nor does it state that Plaintiff was convicted for a violation of NRS 213.1255. (*Id.*). In fact, no NRS statute is referenced in the document. (*See id.*).

In sum, Plaintiff has failed to provide evidence supporting his retaliation claim against Defendant Garofalo. NDOC Defendants, on the other hand, have shown Plaintiff "cannot support a claim of retaliation against Garofalo as [Plaintiff] cannot provide any evidence to support his allegation that Garofalo classified [Plaintiff] as 'high risk to re-offend' based on the fabrication that Johnson was convicted under NRS § 213.1255. [Plaintiff] therefore cannot support the allegation that Garofalo did so because of any protected conduct." (NDOC MSJ 26:19–27:2). As such, Plaintiff's Motion is denied as to this claim. NDOC Defendants' Motion for Summary Judgment is granted as to Plaintiff's retaliation claim against Defendant Garofalo.

### 3. *Plaintiff's claims against Defendant Williams*

Plaintiff sets forth two retaliation claims against Defendant Williams.  In Plaintiff's first claim, Plaintiff asserts that in December 2015 and January 2016, Williams called Plaintiff out of his cell at SDCC to go to the Education Building. (Pl.'s MSJ at 7).  In his declaration, Plaintiff states:

> these meeting[s] is where Brian Williams threatened to retaliate against me by interfering with my upcoming parole hearing if I did not [stop] filing grievances by stating that, . . . "if you keep filing grievances, I will jeopardize your release from prison."  Williams then let Plaintiff know that he was aware of the lawsuits [Plaintiff had filed].  But I did not stop filing grievances.

(Pl.'s Decl. at 6, Ex. 48 to Pl.'s Resp. NDOC MSJ, ECF No. 146-7).  As discussed above, Plaintiff alleges that Williams then directed Defendant Garofalo to conduct a "false risk assessment" classifying Plaintiff as "high risk to re-offend" and that "either Williams assisted Yates in creating a false parole board report in 2016 or ordered Yates to create a false parole board report." (Pl.'s Resp. NDOC MSJ at 5, 7).  However, for the reasons provided Parts B.1 and B.2 *supra*, Plaintiff has not shown that Yates and Garofalo's respective reports were based on false charges or convictions, or that Yates and Garofalo acted in retaliation against Plaintiff for filing lawsuits and grievances.  Still, Plaintiff submits that the chronology of events shows retaliation; that Defendants' actions including Williams's actions, would have chilled a person of ordinary firmness from continuing to file lawsuits and grievances; and that making Plaintiff "a false high risk," and placing false information and false charges in his Parole Board Report "didn't advance any legitimate goals of the correctional institution." (Pl.'s Resp. NDOC MSJ at 11–12).

In order to prevail on his Motion for Summary Judgment, Plaintiff must establish the absence of a genuine issue of fact on each issue material to his case. *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury

could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Regarding the first element of a retaliation claim—an assertion that a state actor took some adverse action against an inmate—Plaintiff has indeed asserted that Defendant Williams, a state actor, took some adverse action against Plaintiff. While Plaintiff maintains that the adverse action taken by Defendant Williams was assisting or directing Garofalo and Yates in producing incorrect reports, which subsequently led Plaintiff's parole to be denied, Plaintiff has not produced evidence either showing Williams actually assisted or directed Garofalo and Yates or that Garofalo and Yates carried out Williams's alleged instructions. Accordingly, Plaintiff has not shown an absence of a genuine issue of material fact regarding Williams assisting or directing Garofalo and Yates in producing incorrect reports.

Nevertheless, Plaintiff has asserted that Williams threatened Plaintiff by telling Plaintiff that if he did not stop filing lawsuit and grievances, then Williams would jeopardize Plaintiff's parole. (Pl.'s Decl. at 6). Indeed, "the mere *threat* of harm can be an adverse action, regardless of whether it is carried out because the threat itself can have a chilling effect [on First Amendment rights]." *Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009); *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012); *see also Burgess v. Moore*, 39 F.3d 216, 218 (8th Cir. 1994) ("[A] threat of retaliation is sufficient injury if made in retaliation for an inmate's use of prison grievance procedures."). Plaintiff's declaration provides that "Williams threatened to retaliate against [Plaintiff] by interfering with [his] upcoming parole hearing if [he] did not [stop] filing grievances[.]" (Pl.'s Decl. at 6). Therefore, because Plaintiff need not show that the threat was carried out, Plaintiff's declaration establishes Williams threatened to interfere with Plaintiff's parole hearing, because of Plaintiff's protected conduct (filing grievances and lawsuits), and that said action chilled Plaintiff's First Amendment rights. Notably, while Defendant Williams asserts in his declaration that he did not direct or assist Defendants Yates

and Garofalo in the preparation of Plaintiff's 2016 Parole Report or the Static-99R risk assessment, (Williams Decl. ¶¶ 16–19), Williams does not deny that he made threatening retaliatory statements to Plaintiff in December 2015 and January 2016. Thus, there is no genuine dispute as to these material facts. *See Anthoine v. N. Cent. Counties Consortium*, 605 F.3d 740, 745 (9th Cir. 2010) (providing that undisputed facts are taken as true for purposes of a motion for summary judgment).

Notwithstanding the above, the Court cannot grant summary judgment in Plaintiff's favor because a genuine dispute of material fact exists as to the fifth element of Plaintiff's retaliation claim against Defendant Williams—that Williams's "action did not reasonably advance a legitimate correctional goal." In the Ninth Circuit, "a successful retaliation claim requires a finding that 'the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals.'" *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995) (quoting *Rizzo v. Dawson*, 778 F.2d 527, 532) (9th Cir. 1985)). "The plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains." *Id.* Here, Plaintiff summarily states that placing false information and false charges in his Parole Board Report "didn't advance any legitimate goals of the correctional institution." (Pl.'s Resp. NDOC MSJ at 12). However, Plaintiff has failed to plead and prove that Williams's threats did not advance a legitimate correctional goal. Thus, the Court cannot find that Plaintiff has carried his burden as to this element. Accordingly, Plaintiff's Motion for Summary Judgment is denied as to this retaliation claim against Williams. Moreover, for the foregoing reasons, NDOC Defendants have not shown they are entitled to summary judgment on this claim, and therefore, their

Motion is likewise denied.  Thus, Plaintiff's claim for First Amendment retaliation will proceed against Defendant Williams.[8]

In Plaintiff's second claim against Defendant Williams, Plaintiff alleges that on July 3, 2016, Williams and someone by the name of "Smith," a non-party to this suit, terminated Plaintiff's visit with his son in retaliation for Plaintiff's lawsuits and grievances. (FAC at 17). Plaintiff further alleges that Smith stated that Plaintiff's son was not on the approved visitors list even though Plaintiff's son had visited ten times prior. (*Id.*).

Defendants move for summary judgment arguing that "Plaintiff has not provided any evidence to support the allegation against non-party 'Smith' let alone any evidence to support an allegation against Williams on the matter of preventing Johnson's son from visiting." (NDOC MSJ 23:19–21).  In his declaration, Defendant Williams indicates that he did not interfere with Plaintiff's visitation list or terminate the visitation of Plaintiff's son with Plaintiff. (Williams Decl. ¶¶ 21–22).  NDOC Defendants provide, *inter alia*, Plaintiff's visitation log through May 2017, which shows that Plaintiff's son "visited Johnson at least twice in 2016, once on February 13, 2016, and then on May 25, 2016." (NDOC MSJ 8:23–26); (Visitation Log, Ex. L to NDOC MSJ, ECF No. 137-4).  NDOC Defendants do not explain how the visitation log supports their Motion for Summary Judgment.

Plaintiff responds by submitting photos which he contends show he has a relationship with his son. (Pl.'s Resp. NDOC MSJ at 12); (Exs. 32–43 to Pl.'s Resp. NDOC MSJ, 146-6). Plaintiff further states that his son's mother would "testify at trial that not only did she bring their son to visit Plaintiff multiple times, but she repeatedly signed notarized forms to allow

---

[8] NDOC Defendants argue that Defendant Williams is entitled to qualified immunity because Plaintiff "cannot show a clearly established law that Williams allegedly violated." (NDOC MSJ 24:21–23).  However, "the prohibition against retaliatory punishment is 'clearly established law' in the Ninth Circuit, for qualified immunity purposes." *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995) (quoting *Schroeder v. McDonald*, 55 F.3d 454, 461 (9th Cir. 1995)); *see also Barnett v. Centoni*, 31 F.3d 813, 815–16 (9th Cir. 1994).  Accordingly, the Court finds that Defendant Williams is not entitled to qualified immunity.

Plaintiff's family and friends to bring Plaintiff's son to see him." (Pl.'s Resp. NDOC MSJ at 12).

The purpose of summary judgment "is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). Though Plaintiff submits that his son's mother would be willing to testify at trial, summary judgment is the stage at which the Court assesses the proof in order to determine whether a trial is necessary. Plaintiff does not state why he did not obtain a declaration or affidavit from his son's mother in order to support his Response—and even if he had obtained a declaration or affidavit, Plaintiff does not explain how his son's mother's testimony that she brought "their son to visit Plaintiff multiple times" and "has repeatedly signed notarized forms to allow Plaintiff's family and friends to bring Plaintiff's son to see him," would show that Defendant Williams terminated Plaintiff's son's visit on July 3, 2016, in retaliation for Plaintiff's grievances and lawsuits. Accordingly, summary judgment is granted in favor of NDOC Defendants as to this retaliation claim.

### 4.     *Plaintiff's claim against Defendant Sandoval*

As best the Court can discern, Plaintiff does not provide specific allegations regarding Defendant Sandoval, but nevertheless contends that Sandoval and other NDOC Defendants knew prior to Plaintiff's 2013 and 2016 parole hearings that prison officials were placing false charges in parole reports, thereby causing the Parole Board to deny parole to inmates. (*See* FAC at 18).

Plaintiff points out that Defendant Sandoval was at a 2012 Board of Prison Commissioners Meeting. (2012 Prison Comm'rs Meeting Mins. at 1). The meeting's minutes indicate that a person by the name of Tonya Brown asked Defendant Sandoval if he was "aware of the computer glitch." (*Id.* at 2). According to Ms. Brown, a person by the name of Don Helling had been deposed in a civil case, *Klein v. Helling*, and had testified about a computer

glitch. Ms. Brown went on to say that, "[t]he computer glitch on—in June 2007, flipped, creating false felony charges in inmates' files." (*Id.* at 3). Further, Ms. Brown contended that the glitch had "affected several other inmates. Inmates are getting sexual assault, murder, attempted escape charges. It's—the caseworkers are removing them, then they're reappearing and coming back." (*Id.* at 3). It is entirely unclear whether Ms. Brown's statements were her own, whether she was quoting from Mr. Helling's deposition, or whether she was quoting someone else.

Solely relying on the minutes of the 2012 Board of Prison Commissioners meeting and Ms. Brown's statements regarding an alleged "computer glitch," Plaintiff jumps to the conclusion that "'NDOC Officials [have] been placing false sexual assault charges in inmates' files that is causing inmates parole to be denied.' And that NDOC officials have been doing this since 2007. Yet [Defendants] refuse to correct it [although] Plaintiff was directly [a]ffected by having multiple false sexual assault charges placed in his Parole Board Reports in 2013 and 2016, that caused his parole to be denied for 6 years[.]" (Pl.'s MSJ at 24–25).

NDOC Defendants move for summary judgment arguing

Plaintiff has not provided any evidence to support any portion of this alleged chain of events to include that there was even a computer glitch in the first place or that it in any way affected Plaintiff's parole hearing. Plaintiff's allegation that a computer glitch caused his parole report to show inaccurate information is not even consistent with his own other allegation that the information was deliberately altered out of retaliation by Defendants Williams and Yates.

(NDOC MSJ 22:11–16).

To satisfy the "retaliatory motive" element of a retaliation claim, a plaintiff must show that his First Amendment activity was "the 'substantial' or 'motivating' factor behind the defendant's conduct." *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009) (quoting *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989)). The evidence establishing such a motive is often circumstantial, *see id.*, but "mere speculation that defendants

acted out of retaliation is not sufficient." *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014).

Here, aside from Plaintiff's bare assertions, Plaintiff only provides the minutes of the 2012

Board of Prison Commissioners meeting to support his claim against Defendant Sandoval.

However, the minutes do not prove that a "computer glitch" occurred, that Defendant Sandoval

knew of any incorrect information or charges in Plaintiff's parole board reports as a result of

any glitch, or that Defendant Sandoval chose not to correct the discrepancies because of

Plaintiff's grievances or lawsuits. Plaintiff's mere speculation that there is a causal connection

is not enough to raise a genuine issue of material fact. *See Nelson v. Pima Cmty. Coll.*, 83 F.3d

1075, 1081–82 (9th Cir. 1996). Accordingly, summary judgment is granted in favor of NDOC

Defendants.

### C.     Equal Protection Clause

"The Equal Protection Clause of the Fourteenth Amendment commands that no State

shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is

essentially a direction that all persons similarly situated should be treated alike." *Cleburne v.*

*Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citation omitted). Prisoners "are protected

under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination

based on race." *Wolff v. McDonnell*, 418 U.S. 539, 555 (1974) (citation omitted); *Walker v.*

*Gomez*, 370 F.3d 969, 973 (9th Cir. 2004). To establish a violation of the Equal Protection

Clause, the prisoner must present evidence of discriminatory intent. *See Washington v. Davis*,

426 U.S. 229, 239–40 (1976). "Intentional discrimination means that a defendant acted at least

in part because of a plaintiff's protected status." *Maynard v. City of San Jose*, 37 F.3d 1396,

1404 (9th Cir. 1994) (emphasis in original) (citation omitted). "Where the challenged

governmental policy is 'facially neutral,' proof of its disproportionate impact on an identifiable

group can satisfy the intent requirement only if it tends to show that some invidious or

discriminatory purpose underlies the policy." *Lee v. City of Los Angeles*, 250 F.3d 668, 686

(9th Cir. 2001) (citing *Village of Arlington Heights v. Metro., Hous. Dev. Corp.*, 429 U.S. 252, 264–66 (1977)).

Here, Plaintiff premises his equal protection claim on the assertion that white inmates with a single sexual assault conviction were given moderate risk to re-offend levels instead of the high risk to re-offend that he received. (FAC at 26). Plaintiff further alleges that NDOC Defendants removed gang affiliation designations for white inmates when they were no longer a part of a gang. (*Id.*). Moreover, Plaintiff asserts that Parole Board Defendants converted sexual assault sentences for black inmates to life without parole but failed to do so for white inmates. (*Id.* at 25, 27).

Defendants move for summary judgment arguing that Plaintiff

> has offered no support for his assertions that NDOC Defendants converted sexual assault sentences for black inmates to life without parole but did not do so for white inmates, kept white inmates convicted of the same crime as Plaintiff at a moderate risk to re-offend level, and fabricated crimes and prior felony convictions. Nor did he provide any support for the supposition that nearly all white inmates that engage in rehabilitative programs are granted parole or that there is a disparity between different racial groups being paroled pursuant to NRS 200.366.

(NDOC MSJ 19:22–20:4). The Court agrees. Although Plaintiff has had the opportunity to conduct discovery in this case, Plaintiff has not presented any evidence on summary judgment that NDOC Defendants engaged in discriminatory conduct or had discriminatory intent. As such, Plaintiff has failed to make a showing sufficient to establish any element essential to Plaintiff's claim. *See Celotex Corp.*, 477 U.S. at 323–24. Accordingly, NDOC Defendant's Motion for Summary Judgment is granted as to Plaintiff's equal protection claim.

### D. Due Process Clause

To prevail on a Fourteenth Amendment procedural due process claim, a plaintiff must show that he was denied a specified liberty interest and that he was deprived of that liberty

interest without the constitutionally required procedures. *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011). "A liberty interest may arise from either of two sources: the due process clause itself or state law." *Carver v. Lehman*, 558 F.3d 869, 872 (9th Cir. 2009) (quoting *Toussaint v. McCarthy*, 801 F.2d 1080, 1089 (9th Cir. 1986)). The guarantees of the Fourteenth Amendment apply only when a constitutionally protected life, liberty, or property interest is at stake. *See Jackson v. Carey*, 353 F.3d 750, 755 (9th Cir. 2003); *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998). Prisoners, however, have "no constitutional or inherent right" to parole. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979).

Nevada state prisoners do not have a liberty interest in the discretionary grant of parole or in eligibility for such parole. *See Moor v. Palmer*, 603 F.3d 658, 661–62 (9th Cir. 2010); *Fernandez v. Nevada*, No. 3:06-cv-00628-LRH-RAM, 2009 WL 700662, at *10 (D. Nev. Mar. 13, 2009). However, in *Anselmo v. Bisbee*, 396 P.3d 848 (Nev. 2017), the Nevada Supreme Court held that "eligible Nevada inmates have a statutory right to be considered for parole by the [Parole] Board," and that an inmate does not receive "proper consideration when the Parole Board's decision is based in part on an inapplicable aggravating factor." *Id.* at 853.

Here, Plaintiff contends that, as an eligible Nevada inmate, his right to be considered for parole was infringed because the Parole Board considered "false" information and improperly applied  aggravating factors during Plaintiff's parole hearings in 2013 and 2016. (*See* FAC at 20–22). More specifically, Plaintiff alleges that Parole Defendants and NDOC Defendants "are all co-conspirators" and fabricated "false parole reports" containing false charges, thereby basing Plaintiff's 2013 and 2016 parole hearings on false charges of which he was never accused or convicted. (*See id.* at 20). Plaintiff further contends that Defendants "falsified the Parole Board Order by stating that he had prior violent convictions, that he had sexually assaulted a child under the age of 14 twice, that he had prior sexual assault convictions, [and that] the his crimes were increasingly more serious, all of which are false." (*Id.*). In addition,

Plaintiff submits that Defendants violated the Fourteenth Amendment by "making Plaintiff a 'high risk to re-offend' . . . based upon . . . crimes that he was not accused nor convicted of." (FAC at 21).

### 1. Plaintiff's claim against NDOC Defendants

Plaintiff argues that Parole Board Defendants improperly denied his parole based on incorrect information presented to them by certain NDOC Defendants—specifically, Defendants Williams, Yates, and Garofalo. (*See* FAC at 20–22); (Screening Order at 4). However, for the reasons provided in Part B.1–B3 *supra*, Plaintiff has not shown that these NDOC Defendants added false charges or convictions to Plaintiff's 2016 Parole Board Report or that Plaintiff's Static-99R risk assessment was based on false charges or convictions. It is true that Plaintiff's 2016 Parole Board Report incorrectly indicated that Plaintiff's sexual assault victim was 13 years old at the time of the offense. (2016 Parole Board Report at 1, Ex. 18 to Pl.'s Resp. NDOC MSJ, ECF No. 146-4). But despite Plaintiff's arguments to the contrary, the victim's age did not cause Plaintiff to be considered for parole based on more severe charges than the crimes for which he was actually sentenced. Indeed, the 2016 Parole Board Report does not reflect any convictions for sexual assault of a child under the age of 14. (*Id.*). Thus, Plaintiff has not shown that Defendants Williams, Yates, and Garofalo infringed on Plaintiff's right to be properly considered for parole by the Parole Board.

Additionally, to the extent that Plaintiff brings this claim against Defendants Masto, Sandoval, and Cox, Plaintiff merely provides the minutes from the 2012 Prison Commissioners Meeting indicating that Defendants Masto, Sandoval, and Cox were present. (2012 Prison Comm'rs Meeting Mins. at 1). But for the same reasons provided in Part B.4 *supra*, the minutes are insufficient to show that Defendants Masto, Sandoval, and Cox knew of any alleged "computer glitch" causing false charges or convictions to appear in inmates' parole board reports or that Plaintiff's 2013 and 2016 Parole Board Reports would subsequently be

affected by this alleged computer glitch. Thus, Plaintiff has failed to show that he is entitled to summary judgment on his due process claim. Conversely, NDOC Defendants have demonstrated that Plaintiff has failed to make a showing sufficient to establish a due process claim. Accordingly, NDOC Defendants' Motion for Summary Judgment is granted as to this claim.

## 2. *Plaintiff's claim against Parole Board Defendants*

This Court's February 25, 2019 Order permitted Plaintiff to proceed with his due process claim for injunctive relief based on the Parole Board Defendants' alleged failure to provide proper consideration for Plaintiff's parole. (Feb. 25, 2019 Order at 6, ECF No. 103). In his Motion for Summary Judgment, Plaintiff details several errors which Plaintiff alleges the Parole Board committed in considering Plaintiff for parole in 2013 and 2016. Plaintiff submits that, under *Anselmo v. Bisbee*, 396 P.3d 848 (Nev. 2017), Plaintiff is entitled to a new parole hearing.

In *Anselmo*, the Nevada Supreme Court held that "eligible Nevada inmates do have a statutory right to be considered for parole by the Board. When the Board clearly misapplies its own internal guidelines in assessing whether to grant parole, this court cannot say that the inmate received the consideration to which they are statutorily entitled. Therefore, under the limited circumstances presented in this case, we conclude that a new parole hearing is warranted." *Anselmo*, 396 P.3d at 849. Notably, the plaintiff in *Anselmo* challenged the Parole Board's application of factor NAC 213.518(2)(k), "nature of criminal record is increasingly more serious." *Id.* at 852. As in Plaintiff's case, the internal guidelines for the Division of Parole and Probation in *Anselmo* stated the following:

> Indicate this factor if criminal conduct of the person has escalated over time to include violence toward victims or others, or the scale of criminal activity has increased over time. If the person is now serving a sentence of life, or Murder/Sexual Assault, don't use this as the person has already committed the

most serious of crimes. This factor is used as a possible indicator of more serious activity in the future.

*Id.*; (*see also* Guidelines at 64, Ex. C to Pl.'s MSJ, ECF No. 104). Thus, because the plaintiff in *Anselmo* was serving a life sentence for murder, the Nevada Supreme Court found that "[b]ased on the plain language of the internal guidelines, this aggravator should not have been applied to [the plaintiff]." *Id.* at 852. The court then evaluated whether the Board's error impacted the plaintiff's right to be considered for parole. *Id.* Relying on a South Carolina case, the court indicated that "while the decision to grant or deny parole is not generally reviewable, the Board is still obligated to act within established parameters." *Id.* at 852–53. The court, therefore, granted the plaintiff's requested relief, and instructed the Board of Parole to vacate its earlier denial of parole and conduct a new hearing in which the aggravating factor "nature of criminal record is increasingly more serious" is not applied. *Id.* at 853.

Here, much like in *Anselmo*, the Parole Board applied factor NAC 213.518(2)(k), "nature of criminal record is increasingly more serious," to Plaintiff. However, the Board's internal guidelines provide that this factor should not be applied "[i]f the person is now serving a sentence of life, or Murder/Sexual Assault[.]" Because Plaintiff's sentence for sexual assault was incarceration for life with the possibility of parole after 10 years, this would suggest that under *Anselmo*, Plaintiff is entitled to injunctive relief in the form of a new parole hearing. Yet, as the Parole Board Defendants argue, Plaintiff's due process claim and Plaintiff's requested relief are now moot.

Parole Board Defendants explain that Plaintiff was heard by the Parole Board on February 20, 2019. (2019 Parole Bd. Order and Risk Assessment, Ex. 1 to Parole Bd. MSJ, ECF No. 114-1). Plaintiff was assessed as a moderate risk to reoffend. (*Id.*). The Board therefore considered factors, including that the "NRS 213.1214 assessment result indicates an above-average risk to reoffend," the victim was 16 years old at the time of the offense, Plaintiff

had numerous prior property referrals as a juvenile, and Plaintiff has a prior referral for robbery as a juvenile. (*Id.*). The Parole Board granted Plaintiff parole to his consecutive sentence. (*Id.*).

Courts have ruled that when a sentence is discharged, no effective relief may be granted, and claims related to it are moot as there is "no statutory or case law exists in Nevada permitting a grant of retroactive parole." *Mack v. Nevens*, No. 2:15-cv-01728-RFB-GWF, 2018 WL 702887, at *4 (D. Nev. Feb. 2, 2018) (citing *Niergarth v. Warden*, 768 P.2d 882, 884 (Nev. 1989)); *see also Kille v. Cox*, No. 2:15-cv-00062-JCM-GWF, 2016 WL 1239253, at *3 (D. Nev. Mar. 29, 2016) ("*Niergarth* held that parole cannot be granted retroactively in Nevada.").

In *Niergarth*, the Nevada Supreme Court indicated that it was

> unaware of any statutory or case-law authority for the proposition that the Parole Board has authority to grant a retroactive parole. Assuming, however, that the Parole Board has such authority, there appears to be no reason why the Parole Board cannot take any appropriate action within its powers at the hearing presently scheduled for June 1, 1989. Further, in light of the Parole Board's refusal to grant appellant a parole to the street, appellant cannot demonstrate that his belief that the Parole Board might grant him a retroactive parole is anything more than speculation.

*Niergarth*, 768 P.2d at 884. Because a parole hearing would be the only relief available and no statutory authority or case law permits a retroactive grant of parole, Plaintiff's claims are moot. *Williams v. State Dep't of Corr.*, 402 P.3d 1260, 1265 n.7 (Nev. 2017); *Almy v. Dzurenda*, No. 3:17-cv-00045-MMD-WGC, 2019 WL 759281, at *4 (D. Nev. Jan. 18, 2019), report and recommendation adopted, No. 3:17-cv-00045-MMD-WGC, 2019 WL 720979 (D. Nev. Feb. 20, 2019).

Plaintiff disputes that his claim and requested relief are moot, arguing that he has merely been "institutionally paroled" but that he has not actually been paroled because he is still "in custody." (Pl.'s Resp. NDOC MSJ at 16). To support his argument, Plaintiff cites several cases for the proposition that "prisoners under consecutive state sentences should be treated as a continuous stream series." (*Id.*) (citing *Peyton v. Rowe*, 391 U.S. 54 (1968)). Plaintiff then

contends he is "still 'in custody' on his 10 to life [sentence] until all of his sentences are served. He hasn't expired his 10 to life sentence." (*Id.*)  However, the cases Plaintiff cites are ones addressing habeas corpus petitions, not § 1983 claims. *See Peyton*, 391 U.S. at 54; *Garlotte v. Fordice*, 515 U.S. 39, 40 (1995).  Therefore, these cases are not applicable to Plaintiff's action. Moreover, Plaintiff argues that his claim is not moot because he "served 6 extra years on false charges" and "this [violation] can still be corrected, in part by providing him with a re-hearing, which is what he requested." (Pl.'s Resp. NDOC MSJ at 16).  However, "the Nevada statutory scheme does not provide any due process right in the grant of parole." *Anselmo v. Bisbee*, 396 P.3d at 851.  And as discussed *supra*, there is no basis for Plaintiff's assertion that Plaintiff served additional time as a result of "false charges."  Additionally, while Plaintiff appears to request a re-hearing so that he may obtain retroactive parole, no statutory authority or case law permits a retroactive grant of parole in Nevada.  Accordingly, Plaintiff's due process claim for injunctive relief against Parole Board Defendants is moot.  Parole Board Defendants' Motion for Summary Judgment is granted as to this claim.

### E.  Ex Post Facto Clause

The States are prohibited from enacting an ex post facto law. U.S. Const., Art. I, § 10, cl. 1.  "One function of the Ex Post Facto Clause is to bar enactments which, by retroactive operation, increase the punishment for a crime after its commission." *Garner v. Jones*, 529 U.S. 244, 249 (2000).  To fall within the ex post facto prohibition, a law must be retrospective, which means that it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it. *Lynce v. Mathis*, 519 U.S. 433, 441 (1997). "Retroactive changes in laws governing parole of prisoners, in some instances, may be violative of this precept." *Garner*, 529 U.S. at 249.

The Supreme Court has not adopted "a single formula for identifying which legislative adjustments, in matters bearing on parole, would survive an ex post facto challenge." *Garner*,

529 U.S. at 252.  Instead, "[t]he question is whether the amended [rule] creates a significant risk of prolonging [the prisoner's] incarceration," and there is no constitutional violation where the legislative change produces "only the most speculative and attenuated possibility of producing the prohibited effect." *Id.* at 251 (citing *California Dept. of Corrections v. Morales*, 514 U.S. 499, 509 (1995)).  "[T]he focus of the ex post facto inquiry is not on whether a legislative change produces some ambiguous sort of 'disadvantage,' nor . . . on whether an amendment affects a prisoner's opportunity to take advantage of provisions for early release." *Id.* at 506 n.3 (internal quotation marks omitted).  "[T]he question of what legislative adjustments will be held to be of sufficient moment . . . must be a matter of degree." *Id.* at 509.

Here, Plaintiff argues that:

> To apply the amended version of NRS 213.1214 [risk assessment] that became effective [2015], would violate [the] Ex Post Facto Clause because they would be apply[ing] an amended law retroactively to Plaintiff that works to disadvantage him as it would make him a "high risk" to reoffend forever, . . .  And as Plaintiff stated before, if Plaintiff is a high risk to re-offend, then the parole board has to deny his parole and because he has a life sentence, he has no expiration date so the parole board is now required to deny his parole until he dies, which converts his sentence from life with the possibility of parole into a life without the possibility of parole.

(Pl.'s MSJ at 26–27); (*see also* FAC at 20–22, ECF No. 11).  In other words, Plaintiff contends that applying the 2015 version of risk assessment mandated by NRS 213.1214 has effectively converted his sentence of life with the possibility of parole into a sentence of life *without* the possibility of parole.  However, the Order Granting Parole dated February 20, 2019, (Parole Bd. Order and Risk Assessment), shows that Plaintiff's "effective date of parole" is May 1, 2019.  Plaintiff acknowledges that he has been "'institutionally paroled' to his consecutive sentence."  Thus, Plaintiff cannot show a violation of the ex post facto clause on this basis.

Moreover, as explained in the Court's prior Order, (ECF No. 88), the NRS 213.1214 risk assessment could not have altered Plaintiff's life sentence.  Plaintiff was convicted of sexual

assault under NRS 200.364 and 200.366 and sentenced to imprisonment in "state prison for life with the possibility of parole, with eligibility for parole beginning when a minimum of 10 years has been served." NRS 200.366; (FAC at 9). The sentencing court also issued Plaintiff a consecutive sentence of eight to twenty years. (*Id.*). In determining retroactivity, the "critical question is whether the [regulations] change[ ] the legal consequences of acts completed before [the] effective date[of the regulations.]" *See Weaver v. Graham*, 450 U.S. 24, 31 (1981). Here, NRS 213.1214 does not change the legal consequence of Plaintiff's acts completed resulting in his life conviction. Parole eligibility does not affect the length of a life prison term, and under Nevada law, Plaintiff is not entitled to parole on a life sentence. *See Dunham v. Crawford*, 2008 WL 624444, at *9 (D. Nev. Mar. 4, 2008). As such, the Court grants NDOC Defendants' Motion for Summary Judgment as to Plaintiff's ex post facto claim.[9]

### F.    Plaintiff's Motion for Default Judgment, (ECF No. 121)

Pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Rule 55(b)(2) further provides that a court may enter a default judgment against a defendant who has failed to appear. Fed. R. Civ. P. 55(b)(2). Whether to enter a default judgment is a question within the discretion of the trial court. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

Here, Plaintiff requests that "the court enter default judgment against defendants or to grant his Motion for Summary Judgment against (NDOC Defendants) for not responding to

---

[9] Plaintiff argues that he is entitled to attorney fees in relation to his summary judgment motion. (Pl.'s MSJ at 28). However, the Ninth Circuit has provided that in these circumstances attorney fees cannot be allowed. *Gonzalez v. Kangas*, 814 F.2d 1411, 1411–12 (9th Cir. 1987). In denying a pro se party attorney fees, the court reiterated that that "the existence of an attorney-client relationship" is a prerequisite to an award of attorney fees." *Id.* at 1412 (quoting *Brandenburger v. Thompson*, 494 F.2d 885 (9th Cir. 1974)). Indeed, it has long been established that "pro se civil rights litigants are not entitled to attorneys fees under 42 U.S.C. § 1988." *Ramirez v. Guinn*, 271 F. App'x 574, 576 (9th Cir. 2008). Therefore, Plaintiff cannot obtain attorney fees in this case.

Plaintiff's Motion for Summary Judgment in 21 days." (Pl.'s Mot. Default J., ECF No. 121).

Plaintiff notes that the 21-day deadline fell on March 28, 2019. (*Id.*). However, on March 27,

2019, NDOC Defendants joined in the Parole Board Defendants' Response to Plaintiff's

Motion for Summary Judgment. (NDOC Defs.' Joinder, ECF No. 116). Plaintiff presents no

argument that NDOC Defendants responding by way of joinder is inappropriate. Accordingly,

Plaintiff's Motion for Default Judgment, (ECF No. 121), is denied.

### G. Plaintiff's Motions to Strike, (ECF Nos. 144, 148)

Plaintiff's identical Motions to Strike, (ECF Nos. 144, 148), argue that the portion of

NDOC Defendants' Motion for Summary Judgment addressing Plaintiff's "parole board

claims" should be stricken. Plaintiff's Motions are based on Rule 12(f), which provides that

"the court may strike from a pleading an insufficient defense or any redundant, immaterial,

impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Plaintiff argues that NDOC

Defendants' Motion for Summary Judgment is redundant because "they have another or a

separate motion pending ruling . . . that was filed via joinder on March 27, 2019." (Pl.'s Mots.

Strike at 2, ECF Nos. 144, 148). "Thus the defendants cannot have 2 separate motions for

summary judgment, pending on the same claim, for same defendants, with separate

arguments." (*Id.*). However, as NDOC Defendants explain, Rule 12(f) applies to pleadings and

does not apply to summary judgment motions. (NDOC Defs. Resp Mot. Strike, ECF No. 147).

Moreover, Plaintiff fails to provide any additional legal authority supporting his Motion. As

such, Plaintiff has failed to show that the Court should apply Rule 12(f) to NDOC Defendants'

Motion for Summary Judgment. Accordingly, Plaintiff's Motions to Strike are denied.[10]

///

---

[10] In light of the instant Order addressing the parties' motions for summary judgment, Plaintiff's Motion for Hearing on Dispositive Motion, (ECF No. 130), and Plaintiff's Motions for Status Check, (ECF Nos. 150, 181), are denied as moot.

## IV.    CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Partial Summary Judgment, (ECF No. 104), is **DENIED**.

**IT IS FURTHER ORDERED** that Parole Board Defendants' Motion for Summary Judgment, (ECF No. 114), is **GRANTED**.

**IT IS FURTHER ORDERED** that NDOC Defendants' Motion for Summary Judgment, (ECF No. 135), is **GRANTED in part and DENIED in part**.  The Motion is denied as to the First Amendment retaliation claim asserted against Defendant Williams for retaliatory threats.  The Motion is granted in all other respects.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Default Judgment, (ECF No. 121), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motions to Strike, (ECF Nos. 144, 148), are **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Hearing on Dispositive Motion, (ECF No. 130), and Plaintiff's Motions for Status Check, (ECF Nos. 150, 181), are **DENIED as moot**.

**IT IS FURTHER ORDERED** that the parties shall have 30 days from the date of this Order to submit a joint pretrial order.

**DATED** this __11__ day of March, 2020.


_____
Gloria M. Navarro, District Judge
United States District Court